**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEON EMANUEL CRAIG,** | : | **Civil No. 3:07-CV-1157** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DONALD KELCHNER, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM   OPINION**

## I.    Statement of Facts and of The Case

### A.    Procedural History

This is a *pro se* civil rights case that was first brought by a state  prisoner,

Deon Emanuel Craig, four years ago, through the filing of a civil rights complaint on

June 28, 2007. (Doc. 1) In the intervening four years, Craig twice moved to amend

his complaint, on August 8, 2007, (Doc. 24) and June 11, 2009. (Doc. 102)  In these

amended complaints, Craig named fifteen defendants including: the Department of

Corrections, the Secretary of Corrections, the prison superintendent where Craig was

housed in 2007, grievance officials, correctional officers, hearing officers, as well as

Office of Professional Responsibility investigators and supervisors. (Doc. 102)  This

far-reaching cadre of defendants are named in a cause of action that appears to arise

out of what Craig characterized as an unfair and retaliatory disciplinary hearing process in May of 2007. (Id.)

With respect to this disciplinary matter, Craig named the correctional staff who were allegedly involved in various shouting match with the plaintiff in May 2007, as defendants, and also named as defendants: (1) correctional officials who wrote incident reports which served as part of the factual basis for findings that led to this discipline; (2) the correctional supervisors who allegedly oversaw these correctional officers; (3) correctional investigators, grievance officials, and hearing officers who played roles in these disciplinary proceedings, reviewed inmate grievances lodged by Craig, or conducted what Craig views as inadequate investigations into this matter; (4) the prison warden, and Secretary of Corrections who are named as defendants because they were responsible for the operation of the prison, and, in Craig's view, failed to adequately respond to his complaints; and (5) the Department of Corrections as an institution. (Id.)

While these allegations have been longstanding, and pending before the courts for many years, they have yet to receive any informed scrutiny on their merits. Several circumstances have combined to delay a merits analysis of these allegations: First, the district court has on three occasions been compelled to strike, or order withdrawn, premature and inadequately presented summary judgment motions

tendered by the defendants. (Docs. 83, 128, and 177) In addition, Craig, who is proceeding *pro se* and has now been released from prison, has delayed these proceedings by twice failing to appear for pre-trial conferences in this case as ordered by the court. (Docs. 185, 189, 190)

It is against the backdrop of this tortured procedural history that this matter was assigned to the undersigned on May 25, 2011. (Doc. 188.) Recognizing the importance of clarity in this litigation, we entered a series of orders directing the parties to focus on the merits of their longstanding allegations, and setting a schedule for examining, considering and addressing the merits of these claims. (Docs. 189, 190)  The defendants have complied with this direction by timely filing a summary judgment motion, as instructed by the Court. (Docs. 191, 192 and 193)  For his part, Craig has allowed this court-ordered deadline to lapse without filing a response to this dispositive motion.  In the face of this inaction by Craig, the Court concludes that this matter is now ripe for resolution.

For the reasons set forth below the defendant's motion for summary judgment will be granted.

### B.    Factual Background

This case arises out of an incident which occurred at the State Correctional Institution, (SCI) Camp Hill in May 2007, when Deon Emanuel Craig, was housed

as a prisoner in this state facility. While the plaintiff's allegations are sometimes difficult to discern, it appears that, at some time in early May 2007, Craig attempted to file grievances and complaints against at least one corrections officer, Lawrence Cutright. (Doc. 102)  Craig alleges that other correctional staff, including defendants Zobitne, Snook, and Swift, may have attempted, unsuccessfully, to dissuade him from filing these grievances. (Id.)  Approximately two weeks later, on May 18, 2007, Craig claims that he received a misconduct report, a citation for an alleged disciplinary infraction, from defendant Correctional Officer Hunsberger. (Id.) This misconduct report issued by Hunsberger cited Craig for engaging in disorderly conduct that disrupted a  pill line, the process by which prisoners on the block are assembled to receive their prescribed medication. (Doc. 193, Hunsberger Declaration, ¶ 4.) According to the misconduct report filed by Officer Hunsberger,  Craig's shouting interfered with the orderly progress of the pill line because it presented a noisy distraction to officers which caused them to divide their attention between the yelling and the prisoners seeking to receive their medication,  (id., Hunsberger Declaration, ¶ 5 ), actions which in the view of Officer Hunsberger threatened the security of the prison. (Id., Hunsberger  Declaration, ¶ 8.)

This May 18, 2007, incident at the prison pill line then led to an angry exchange between Craig and correctional staff, with staff allegedly ordering Craig to

"get off his door," and Craig responding  by shouting: "You assholes think you can run this shit However [sic] you want but we own this Block, " and "Open this gate and I'll own your fuckin [sic] ass". (Id., Hunsberger Declaration, ¶ 7. )

On May 22, 2007, Craig received a hearing on this disciplinary infraction. Defendant Moslak conducted this hearing on the misconduct report issued to Deon Craig for refusing to obey Correctional Officer Hunsberger's order and threatening him. (Id., Moslak Declaration, ¶ 2.)  At this hearing, Craig pleaded not guilty to the charges, submitted a written version in response to the charges, but declined to testify. (Id., Moslak Declaration,¶ 3.) Confronted with competing, and irreconcilable, accounts of the encounter between Craig and Hunsberger, Hearing Officer Moslak resolved these credibility issues in favor of Officer Hunsberger's account, and found Craig guilty as charged. (Id., Moslak Declaration,¶ 4.)  Craig was then sentenced to to 90 days in disciplinary custody. (Id.)

Thus, in the course of these disciplinary proceedings, Craig was given advance notice of these charges, was provided  a hearing on the charges, was given the right to present evidence, was advised of his administrative appeal rights, and received the full panoply of procedural rights generally afforded inmates in this disciplinary setting.

Despite being afforded a hearing on these disciplinary citations, Craig subsequently protested this disciplinary hearing outcome, and various other matters, to investigative staff at the prison, who examined these allegations, but discounted Craig's claims. Superintendent Kelchner, and prison grievance officials Watson and Taggart, also are alleged by Craig to have declined to act favorably upon any of the plaintiff's various grievances, claims or contentions.

## II.   Discussion

### A.   Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted.

At the outset, we note that this case is now in a posture where the plaintiff has defaulted on multiple litigation responsibilities which he has in this matter. Indeed, within the past six months the plaintiff has twice failed to appear for pre-trial conferences in this case, and has now failed to comply with the briefing schedule set by the Court on this summary judgment motion.

Such failures have consequences. Under the Local Rules of this Court the plaintiff should be deemed to concur in this motion, since Craig has failed to timely oppose the motion, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this Court warrants dismissal of the action, since  Local Rule 7.6

of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to

motions and  provides that:

> Any party opposing any motion, other than a motion for summary
> judgment, shall file a brief in opposition within fourteen (14) days after
> service of the movant's brief, or, if a brief in support of the motion is not
> required under these rules, within seven (7) days after service of the
> motion. *Any party who fails to comply with this rule shall be deemed not
> to oppose such motion*. Nothing in this rule shall be construed to limit
> the authority of the court to grant any motion before expiration of the
> prescribed period for filing a brief in opposition. A brief in opposition
> to a motion for summary judgment and LR 56.1 responsive statement,
> together with any transcripts, affidavits or other relevant documentation,
> shall be filed within twenty-one (21) days after service of the movant's
> brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to

dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with

the [R]ule after a specific direction to comply from the court.' Stackhouse v.

Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc.,

No. 09-1704, 2010 WL 3703808, *1 (M.D.Pa. Aug.26, 2010).  Moreover, in this case

the necessity of compliance with court orders and the local rules was underscored in

writing for the plaintiff at the outset of this litigation. Nonetheless, despite this

explicit warning Craig has not complied with the local rules, or this Court's order, by

filing a timely response to this motion. Therefore, this procedural default compels the

Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice. *See*
> Fed. R. Civ. P. 1. Often that will mean that courts should strive to
> resolve cases on their merits whenever possible. However, justice also
> requires that the merits of a particular dispute be placed before the court
> in a timely fashion ...." McCurdy v. American Bd. of Plastic Surgery,
> 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of

our legal system. A failure on our part to enforce compliance with the rules, and

impose the sanctions mandated by those rules when the rules are repeatedly breached,

"would actually violate the dual mandate which guides this Court and motivates our

system of justice: 'that courts should strive to resolve cases on their merits whenever

possible [but that] justice also requires that the merits of a particular dispute be placed

before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one

party's refusal to comply with the rules does not lead to an unjustified prejudice to

those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed

to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss

filed by the defendants. This failure to respond now compels us to apply the sanction

called for under Rule 7.6 and deem the plaintiff to not oppose this summary judgment motion.

**B.**    **The Defendants Are Entitled To Judgment in Their Favor on the Claims Set Forth in the Plaintiff's *Pro Se* Complaints**

**1.**    **Standard of Review-Summary Judgment**

In any event, the plaintiff's claims fail on their merits. The defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is

a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all

evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Thus, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing, Stelwagon Mfg. v. Tarmac Roofing, Sys., Inc., 63 F.3d 1267, 1275, n. 17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial,

does not permit its consideration at the summary judgment stage. <u>Henry v. Colonial Baking Co. of Dothan</u>, 952 F.Supp. 744 (M.D.Ala.1996).

<u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D. Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. <u>See, e.g.</u>, <u>Synthes v. Globus Medical, Inc.</u>, No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon University</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); <u>Carpet Group International v. Oriental Rug Importers Association, Inc.</u>, 256 F. Supp. 2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. of Newark NJ v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982); <u>see also</u> <u>Sunshine Books, Ltd. v. Temple University</u>, 697 F.2d 90, 96 (3d Cir. 1982). " [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the

veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

### 2.   The Eleventh Amendment to the United States Constitution Bars This Lawsuit Against a State Agency

At the outset, Craig's complaint, which names the state Department of Corrections as a defendant,  runs afoul of  basic constitutional and statutory rules limiting lawsuits against state agencies. First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996) Absent an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court. Moreover as a matter of statutory interpretation, the plaintiff cannot bring a damages action against these state agencies or state officials in their official capacity since it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

These settled legal tenets apply here and compel dismissal of the Department of Corrections from this lawsuit. Since Craig's damages claims against this state agency are barred under the Eleventh Amendment, his complaint against the state Department of Corrections must be dismissed.

### 3.   Craig's Claims Against Supervisory and Investigative Defendants Fail as a Matter of Law

In addition, we find that Craig's claims against a host of supervisory and investigative defendants clearly fail as a matter of law.[1]   In considering claims brought against supervisory or investigative officials arising out of alleged Eighth Amendment violations, the courts  recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

For example, supervisory liability will rest on the basis that supervisors maintained deficient policies that resulted in the plaintiff sustaining a constitutional tort injury.  In these kinds of cases based upon allegations of deficient policies, the Third Circuit has fashioned a four-part test based upon the reasoning of City of Canton v. Harris, 489 U.S. 378 (1989), for supervisory liability on a constitutional tort claim for failure to supervise.  Under this test, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that:  (1) the existing policy or practice created an unreasonable risk of the . . . injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." Beers-

---

[1]These supervisory and investigative defendants include defendants Barnacle, Kelchner, Watson, Taggart, Cole, Beard and Novitsky.

Capitol, 256 F.3d at 134 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.

1989).  Accordingly, these approaches are summarized as follows:

> In sum, to make out a claim . . . based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored the particular risk . . . , the plaintiffs must meet the test from Farmer v. Brennan:  They must show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious.  For the plaintiffs' claims seeking to hold supervisors liable for their deficient policies, Sample's four-part test provides the analytical structure for determining whether the policymakers exhibited deliberate indifference to the plaintiffs' risk of injury, it being simply the deliberate indifference test applied to the specific situation of a policymaker.

 Id.  In this setting the Third Circuit has noted that, in order to defeat a motion for

summary judgment, a plaintiff alleging deliberate indifference on the part of prison

supervisors "must present enough evidence to support the inference that the

defendants knowingly and unreasonably disregarded an objectively intolerable risk of

harm."  Id. at 132.  Craig's pleadings simply  do not meet this stringent standard of

proof.

Furthermore, it is equally clear that a claim of a constitutional deprivation

cannot be premised merely on the fact that the named defendant was the prison

warden, or a prison supervisor, when the incidents set forth in the complaint occurred.

Quite the contrary, to state a constitutional tort claim the plaintiff must show that the

supervisory defendants actively deprived him of a right secured by the Constitution.

Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine

v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and

can only follow personal involvement in the alleged wrongful conduct shown through

specific allegations of personal direction or of actual knowledge and acquiescence in

the challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . .  See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of

the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution

<u>Ashcroft v. Iqbal</u>,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).

Nor can inmates, like Craig,  sustain  constitutional tort claims against prison officials based solely upon assertions that those officials failed to adequately investigate their past grievances. Inmates do not have a constitutional right to a prison grievance system. <u>See Jones</u>, 433 U.S. at 137-138; <u>Speight v. Sims</u>, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. <u>See also Alexander v. Gennarini</u>, 144 F. App'x. 924 (3d Cir 2005) (involvement in post-

-18-

incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).  See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause)

> Pressley v. Beard, 266 F.App'x 216, 218 (3d Cir. 2008).

In this case, fairly construed, Craig's claims against defendants Barnacle, Kelchner, Watson, Taggart, Cole, Beard and Novitsky consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with their

processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants are entitled to be dismissed from this case.

**4.     Craig Has Failed To State a Claim That The Disciplinary Actions Taken Against Him Violated His Constitutional Rights**

With respect to the remaining defendants, the gravamen of Craig's various complaints can be simply stated:  Craig perceives, and alleges, that these correctional staff all endeavored to harass and retaliate against him by lodging false disciplinary charges against him in May of 2007.

In bringing constitutional claims against correctional officers arising out of a prison disciplinary hearing, Craig faces an exacting burden of proof. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of

a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim . . . so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles also directly apply to inmate retaliation claims stemming from prison disciplinary proceedings. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must prove the following

three elements: (1) the conduct in which he engaged was constitutionally protected;

(2) he suffered adverse action at the hands of prison officials; and (3) his

constitutionally protected conduct was a substantial motivating factor in the

defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With

respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff

must demonstrate that he suffered action that "was sufficient to deter a person of

ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225

(3d Cir. 2000). While filing false misconduct reports may constitute the type of action

that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523,

530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails

whenever the defendant shows that there is "some evidence" to support the discipline

citation. As the United States Court of Appeals for the Third Circuit has observed:

"[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence'

supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th

Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary

determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.

App'x 241, 244  (3d Cir. 2010).

These principles control here and compel dismissal of Craig's claims against the

defendant correctional officers. Since, "filing false disciplinary charges does not itself

violate a prisoner's constitutional rights, so long as procedural due process protections were provided," <u>Richardson v. Sherrer</u>, 344 F. App'x 755, 757-758 (3d Cir. 2007), Craig's claims against correctional staff, which are premised solely on his allegations that staff endeavored to punish or retaliate against him through the submission of allegedly false disciplinary report statements or testimony, also fail in a case such as this where Craig was given a full hearing, was afforded all of his procedural due process rights, and where there plainly was "some evidence" supporting this disciplinary decision.

Entirely aside from this basic flaw in his complaint, Craig's claims against these correctional defendants fail for another reason. With respect to numerous individual defendants, Craig's complaint simply does not meet the pleading standards required by federal law. The United States Court of Appeals for the Third Circuit has aptly described the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that,

when considering a motion to dismiss, a court should "begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of

truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint,

the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions. Rather, a complaint must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of

mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. Second, a District Court must then

> determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

Here, many of Craig's allegations against individual correction defendants simply do not meet this threshold pleading standard. For example, the complaint names correctional officer John Snook as a defendant but makes no factual allegations regarding Snook beyond asserting, without further explanation, that Snook "conspired" with others to harm Craig. (Doc. 102)  Similarly, Craig names Renee Zobitne and Gerald Swift as defendants, but simply recites in his complaint that these defendants expressed anger and annoyance with Craig when they provided him with grievance forms so that he could complain about other correctional staff. (Doc. 102, ¶¶8 and 9) Such conduct falls far below the legal definition of retaliation in a civil rights context which typically requires that a plaintiff demonstrate that he suffered from official action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). In sum, the act of providing an inmate with the means to lodge grievances, even if done in a surly fashion, does not in our view violate the constitution. Therefore, constitutional claims as to these defendants–who actually helped Craig submit grievances, albeit reluctantly– simply fail.

Thus, in its present form, with respect to many of these corrections personnel, Craig's complaint does not allege facts which demonstrate that individual defendants in any way violated a constitutionally protected right or interest of the plaintiff. Since "a complaint must do more than allege the plaintiff's entitlement to relief . . . [a] complaint has to 'show' such an entitlement with its facts," <u>Fowler</u>, 578 F.3d at 211, the failure of this complaint to assert facts giving rise to a plausible cause of action is fatal here and compels dismissal of these defendants.

## III.   <u>Conclusion</u>

In sum, having failed to respond to the defendants' motion for summary judgment, the plaintiff is now deemed not to oppose that motion. In any event we have conducted an independent merits analysis of the legal claims in this case and have found that the defendants are entitled to summary judgment on the claims set forth in the plaintiff's complaint. Accordingly, for the foregoing reasons, the defendants' motion for summary judgment is GRANTED, and the clerk is directed to close this case.

So ordered this 22nd day of July, 2011.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge
